UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**RONALD PODGURSKI,**               )
                                    )
      **Plaintiff,**           )
                                    )
      v.                       )    Civil Action No. 13-11751-DJC
                                    )
**DEPARTMENT OF CORRECTION, et al.,** )
                                    )
      **Defendants.**          )
_____ )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                      September 23, 2014

## I.    Introduction

Plaintiff Ronald Podgurski ("Podgurski") brought this lawsuit against several Defendants: the Massachusetts Department of Correction ("the DOC"); the University of Massachusetts Correctional Health Program ("UMCH"); James Saba ("Saba"), superintendent of the Massachusetts Correctional Institute, Cedar Junction at Walpole ("Walpole"), in his individual capacity; Michael A. Thompson ("Thompson"), superintendent of the Massachusetts Correctional Institute in Concord ("Concord"), in his individual capacity; Dr. A. Hameed, medical director at Walpole ("Dr. Hameed"); and Dr. Patricia Ruze, medical director at Concord ("Dr. Ruze") (collectively, "the Defendants"). D. 7 at 2–4. Podgurski alleges violations of the Eighth and Fourteenth Amendments against the individual Defendants (Count One); violation of the Massachusetts Declaration of Rights against the individual Defendants (Count Two); and negligence/medical malpractice against the DOC, UMCH, Dr. Hameed and Dr. Ruze (Count Three), based on allegedly inadequate medical treatment he received while incarcerated. D. 7 at

1

1.  UMCH has moved to dismiss Counts One and Two for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). D. 12. The DOC, Saba and Thompson (collectively, "the DOC Defendants") have moved to dismiss all counts for failure to state a claim. D. 21. For the reasons discussed below, the Court ALLOWS UMCH's motion, D. 12, and ALLOWS IN PART and DENIES IN PART the DOC Defendants' motion, D. 21.

## II. Factual Allegations

The facts recited are as alleged in the amended complaint, D. 7.

Podgurski has been a prisoner at MCI, Cedar Junction at Walpole ("Walpole") since on or about July 23, 2010, id. ¶ 12, where Saba was the superintendent. Id. ¶ 4. At the time Podgurski was incarcerated at Walpole, he had a documented history of foot problems and had been receiving treatment from a podiatrist on a monthly basis. Id. ¶ 15. Podgurski asserts that the Defendants were on notice about his foot problems since the beginning of his incarceration. Id. ¶ 16. He alleges that upon his incarceration, his daughter provided Saba with a "letter from his podiatrist explaining his need for regular podiatric treatment." Id. ¶ 17. Podgurski further alleges that Saba "rebuffed" the letter and informed Podgurski's daughter that the DOC would follow the advice of UMCH staff, as opposed to "any outside doctors." Id. ¶ 17.

UMCH is a program of the University of Massachusetts Medical School ("UMMS") which, pursuant to a contract with the DOC, was responsible for providing medical care to inmates in DOC custody. Id. ¶ 3. Dr. Hameed was the medical director at Walpole and a UMCH employee responsible for treating Podgurski during his incarceration. Id. ¶¶ 8–9.

Podgurski asserts that after receiving inadequate medical care for his feet while incarcerated at Walpole, he suffered from infections, gangrene and a number of other problems. Id. ¶ 18-41.

Podgurski was reassigned to MCI Concord ("Concord") in November 2010, id. ¶ 42, where Thompson was the superintendent. Id. ¶ 6. Dr. Ruze was the medical director at Concord and a UMCH employee responsible for treating Podgurski during his incarceration there. Id. ¶¶ 10–11. Podgurski asserts that after receiving inadequate medical care for his feet while incarcerated at Concord, he had to undergo surgical procedures to treat one of his feet, including the removal of a metatarsal joint. Id. ¶¶ 42–55. After the surgery, Podgurski experienced persistent infections and received intravenous antibiotics for six weeks. Id. ¶ 55–56. Podgurski's conviction was thereafter overturned and he was released from DOC custody directly to Brockton hospital to continue receiving intravenous antibiotics. Id. ¶ 57. Podgurski alleges that he continues to suffer from foot problems and doctors "predict long-lasting effects" because of the care he received while incarcerated. Id. ¶ 59.

### III. Procedural History

Podgurski initiated this action on July 22, 2013. D. 1. He amended the complaint on November 8, 2013. D. 7. UMCH has now moved to dismiss Counts One and Two. D. 12. Dr. Hameed and Dr. Ruze have moved for referral to a medical malpractice tribunal.[1] D. 15. The DOC Defendants have moved to dismiss all counts against them. D. 21. After a hearing on July 8, 2014, the Court took these matters (except for D. 15 that the Court resolved at the hearing) under advisement. D. 29.

### IV. Standards of Review

#### A. <u>Motion to Dismiss for Failure to State a Claim</u>

---

[1] At the July 8, 2014 hearing, the Court ALLOWED Dr. Hameed and Dr. Ruze's unopposed motion to stay the claims against them pending the outcome of a state medical malpractice tribunal. D. 29, 30.

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court accepts "the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). The Court must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quotations and citations omitted). That is, a claim must be "plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although the Court's inquiry does not demand "a high degree of factual specificity," García-Catalán, 734 F.3d at 103 (internal quotation omitted), the complaint "must contain more than a rote recital of the elements of a cause of action." Id. (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)).

B. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court should apply a standard of review 'similar to that accorded a dismissal for failure to state a claim' under subsection 12(b)(6)." Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)); see also Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico, 189 F.3d 1, 14 n.10 (1st Cir. 1999). In deciding a Rule 12(b)(1) motion, however, the Court may consider materials outside the pleadings, including affidavits. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

V. **Discussion**

A. **The Court ALLOWS UMCH's Motion to Dismiss**

UMCH argues that because it is a state agency, it is protected from this suit by sovereign immunity, D. 13 at 1, and, therefore, this Court does not have subject matter jurisdiction over the claims against it.[2]

"As a general matter the several states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent."[3] Greenless v. Almond, 277 F.3d 601, 606 (1st Cir. 2002). "This immunity extends to any entity that is an 'arm of the state.'" Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (citation omitted). To determine whether an entity is an arm of the state:

> a court must first determine whether the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity. If no explicit indication exists, the court must consider the structural indicators of the state's intention. If these point in different directions, the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment.

Irizarry-Mora v. Univ. of Puerto Rico, 647 F.3d 9, 12 (1st Cir. 2011) (citations and quotations omitted). For the first prong, if no explicit indication exists, the Court considers structural factors to determine whether "the state clearly structured the entity to share its sovereignty." Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 39 (1st Cir. 2004) (citation and quotations omitted). Those factors include, but are not limited to:

> (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function

---

[2] "A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes . . . sovereign immunity . . . ." Collazo-Rosado v. Univ. of Puerto Rico, 775 F. Supp. 2d 376, 379 (D.P.R. 2011) (citing Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001)).

[3] Massachusetts has not consented to being sued in federal courts in civil rights cases. Hannon v. Beard, 661 F. Supp. 2d 87, 90 (D. Mass. 2009) (citing Com. v. ELM Med. Labs, Inc., 33 Mass. App. Ct. 71, 76 (1992)).

5

is governmental or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions.

Wojcik, 300 F.3d at 99 (citation omitted). Second, if the aforementioned factors point in different directions, the Court must then consider "the risk that the damages will be paid from the public treasury." Breneman, 381 F.3d at 39. The focus as to this prong is "whether the state has legally or practically obligated itself to pay the entity's indebtedness." Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003).

"Judges in this District have consistently held that UMass and its departments and agencies are arms of the state entitled to Eleventh Amendment immunity." BT INS, Inc. v. Univ. of Mass., No. 10-cv-11068-DPW, 2010 WL 4179678, at *3 (D. Mass. Oct. 19, 2010) and cases cited; see, e.g., McGee v. UMass Corr. Health, No. 09-40120-FDS, 2010 WL 3464282, at *4 (D. Mass. Sept. 1, 2010). Moreover, the "First Circuit has not undertaken to disturb this settled conclusion among Judges of the District, BT INS, Inc., 2010 WL 4179678, at *3 (citing Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program, 187 F.3d 24, 27 (1st Cir. 1999), nor have Massachusetts state courts held otherwise. Id. and cases cited.

Based upon this settled law and the record before the Court which includes an affidavit submitted in support of UMCH's motion, D. 13-1, the Court concludes that UMCH is an arm of the state for the purposes of the Eleventh Amendment and, accordingly, any claim for money damages against it is barred. See McGee, 2010 WL 3464282, at *3-4.

For these reasons, the Court ALLOWS UMCH's motion to dismiss, D. 12.

B. **DOC Defendants' Motion to Dismiss**[4]

    *1.    Podgurski Has Sufficiently Pleaded an Eighth Amendment Claim as to Saba*

First, the DOC Defendants assert that Podgurski has not sufficiently pleaded his constitutional claims. For the reasons discussed below, the Court disagrees.

42 U.S.C. § 1983 provides a private right of action for constitutional deprivations of state actors. Here, Podgurski has asserted a violation of his Eighth and Fourteenth Amendment Rights.

As to Podgurski's Eighth Amendment claim, the United States Supreme Court has held:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively, subjectively serious . . . [and]; . . . a prison official must have a sufficiently culpable state of mind. . . .In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations and quotations omitted). Here, taking into account Podgurski's pleaded allegations and the attached photo exhibit, the Court concludes that Podgurski has sufficiently pleaded that he had a serious medical need and that Saba was deliberately indifferent to it.

        i.    Serious Medical Need

"A medical need is 'serious' if it is one that has been diagnosed by a physician mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990). Podgurski pleads that when he was sent to Walpole in July 2010, he had a documented history of foot problems and had been receiving treatment from a podiatrist on a monthly basis.

---

[4] The Court will not address claims brought against Thompson as Podgurski has agreed to dismiss his claims against that Defendant. D. 25 at 8.

D. 7 ¶ 15.  Podgurski alleges that his daughter put Saba on notice of his "need for regular podiatric treatment."  Id. ¶ 17.  Still, Podgurski alleges, five weeks elapsed before he was provided any medical attention, leading to his "feet [becoming] severally infected with what turned out to be gangrene."  Id. ¶ 27.  His right foot was also "bleeding profusely through the toilet paper and sock he put on it to slow the bleeding."  Id.  Podgurski asserts that when he was seen by the DOC medical staff, Dr. Hameed, id. ¶ 8, was dismissive and failed to recognize the severity of the infection.  Id. ¶ 30.  His foot continued to bleed and show other signs of infection in August 2010, id. ¶ 33, as well as show "serious signs of gangrene with major discoloration" by September of that year.  Id. ¶ 34.  Still, "the Defendants still had not arranged for him to see a podiatrist."  Id. ¶ 35.

On September 14, 2010, Podgurski received a surgical consultation at Lemuel Shattuck Hospital.  Id. ¶ 36.  There, doctors determined that his foot had developed gangrene, requiring surgery.  Id. ¶ 37.  Still, Podgurski was not permitted to see a podiatrist until late September or early October 2010.  Id. ¶ 39.  The treating DOC podiatrist, Dr. King, noted that Podgurski should have been receiving antibiotics and requested to provide treatment to Podgurski at least once a month.  Id. ¶¶ 40–41.  The Defendants complied with Dr. King's treatment recommendation for only two months.  Id. ¶ 41.

The Court concludes that Podgurski has sufficiently pleaded a serious medical need.  In addition to diagnoses for treatment by more than one physician, it is reasonable to infer that a lay person would recognize the need for treatment from these facts.  See also Gaudreault, 923 F.2d at 208 (citation omitted) (noting that "[t]he 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment").

    ii.    Deliberate Indifference

The First Circuit has held:

> In the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation. . . . In the latter scenario . . . the analysis focuses on whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent tort.

Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citation and quotations omitted). That is, Podgurski must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization," . . . between the actor and the underlying violation." Id.

Further, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. Therefore, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health and safety." Id. That is, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Here, taking the complaint as a whole and looking at the facts in the light most favorable to Podgurski, one could reasonably infer that Saba was deliberately indifferent to Podgurski's serious medical needs under either a primary or supervisory liability theory. As to primary violator liability, Podgurski pleaded that his daughter informed Saba, with a letter from Podgurski's podiatrist, that Podgurski required regular podiatric treatment, which Saba "rebuffed." D. 7 ¶ 17. This allegation, considered together with the allegations that Podgurski

showed signs of deterioration that could be apparent to a lay person, including visible infection, walking with a cane, crutch or walker and constant complaints of pain to the Defendants and to nurses, id. ¶¶ 24–28, 31, support the plausible inference that Saba knew of the "facts from which the inference could be drawn" that Podgurski had a serious medical need and then disregarded it. See also Ruiz-Rosa v. Rullan, 485 F.3d 150, 157 (1st Cir. 2007) (noting that [i]n some circumstances, "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious").

Since Podgurski's counsel indicated at the hearing that he contends that Saba was a primary violator and the Court concludes that the pleaded facts are sufficient as to this theory of liability, the Court need not address whether there are sufficient allegations of supervisory liability.

The DOC Defendants rely on Spruill v. Gills, 372 F. 3d 218, 236 (3rd Cir. 2004), to argue that Saba is not a medical professional and therefore had "no control over UMCH employees in the clinical decision-making process and thus are entitled to rely on the professional judgment of medical providers." D. 22 at 7; see Spruill, 372 F. 3d at 236 (concluding that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"). This argument is unavailing in light of the signs of Podgurski's medical need that would be apparent to a lay person, as discussed above.

The DOC Defendants also argue that "an inmate is not entitled to ideal care or the care of his choice" but only to "adequate medical care." D. 22 at 10. While it is true that "the right to be free from cruel and unusual punishment does not include the right to treatment of one's choice," Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981), "deliberate indifference may be

10

found where the attention received is so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 932 F.2d 231, 234 (1st Cir. 1991) (citations and quotations omitted). As discussed above, Podgurski has sufficiently alleged that the care he received was clearly inadequate.

For these reasons, the Court DENIES the DOC Defendants' motion to dismiss the Eighth Amendment claim against Saba.

### 3. *Podgurski has Sufficiently Pleaded a Fourteenth Amendment Claim as to Saba*

To the extent the DOC Defendants argue that Podgurski has not stated a Fourteenth Amendment claim, the Court disagrees. "Where, as here, a plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). First, "in situations where actual deliberation on the part of a governmental defendant is practical, the defendant may be held to have engaged in conscience-shocking activity by exercising deliberate indifference." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (citation and quotations omitted). Given this fact-specific inquiry, id., the Court declines to dispose of Podgurski's substantive due process claim on this ground, particularly as discussed above, Podgurski has sufficiently pleaded a factual basis for Saba's deliberate indifference of his medical need.

As to a protected liberty interest, claims "covered by a specific constitutional provision, such as the . . . Eighth Amendment . . . must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); Albright v. Oliver, 510 U.S. 266, 273 (1994). As discussed above,

11

reading the complaint in the light most favorable to Podgurski, he has alleged a protected liberty interest in adequate medical care during incarceration pursuant to the Eighth Amendment.

### 4. *Saba is Not Entitled to Qualified Immunity*

On a similar note, the DOC Defendants argue that Saba is entitled to qualified immunity because Podgurski has failed to demonstrate that Saba deprived him of a constitutionally protected right. D. 22 at 11. "The defendants are entitled to qualified immunity unless: 1) the plaintiff's allegations, if true, establish a constitutional violation, 2) the right was clearly established at the time of the alleged violation and 3) a similarly situated reasonable officer would have understood that the challenged action violated the constitutional right at issue." Carroll v. City of Quincy, 441 F. Supp. 2d 215, 223 (D. Mass. 2006) (citing Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 83 (1st Cir. 2006)). "For a plaintiff to defeat qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Carroll, 441 F. Supp. 2d at 223 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Conduct that is deliberately indifferent to an excessive risk to [an inmate] cannot be objectively reasonable conduct." Carroll, 441 F. Supp. 2d at 223. As discussed above, Podgurski has plausibly alleged a constitutional violations as to his Eighth Amendment claim against Saba and the Court need not determine, on this disputed record, the extent of Saba's alleged deliberate indifference at this juncture. See id. at 223–24 (concluding that "[b]ecause there is a genuine issue of material fact with respect to defendants' alleged deliberate indifference, they are not entitled to qualified immunity").

For all of these reasons, the Court DENIES the motion to dismiss the civil rights claims (Count One) as to Saba.

### 5. *The Court Cannot Conclude that a Private Right of Action Does Not Exist Under the Massachusetts Declaration of Rights*

Finally, the DOC Defendants contend that no private right of action for damages exists under Article 26 of the Massachusetts Declaration of Rights. D. 22 at 10. The relevant provision of Article 26, like the Eighth Amendment, prohibits "cruel and unusual punishments." Cryer v. Spencer, No. 11-10654-DJC, 2012 WL 892883, at *7 (D. Mass. March 15, 2012) (quoting Article 26). Although the Supreme Judicial Court has not squarely addressed this issue, it has suggested in dicta that "a person whose constitutional rights have been interfered with may be entitled to judicial relief even in the absence of a statute providing a procedural vehicle for obtaining relief." Phillips v. Youth Dev. Program, Inc., 390 Mass. 652, 657–58 (1983); Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction, 406 Mass. 156, 159–60 (1989) (noting that "a State may not violate a person's constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights"); see Parsons ex rel. Parsons v. Town of Tewksbury, No. 091595, 2010 WL 1544470, at *4 (Mass. Super. Jan. 19, 2010) (noting that "[n]o Massachusetts appellate court has conclusively addressed the question of whether a party may bring a cause of action for damages based solely on the Declaration of Rights in the absence of a statutory vehicle"). With this guidance, the Court agrees with the Parsons court that "as a general proposition, a cause of action can, in certain circumstances, be brought directly under the Massachusetts Declaration of Rights in the absence of a statutory vehicle for obtaining relief." Parsons, 2010 WL 1544470, at *5; see also McClure v. East Brookfield, No. 97–2004, 1999 WL 1323628, at *2 (Mass. Super. Mar. 11, 1999) (denying summary judgment of claim brought directly under Massachusetts Declaration of Rights). This is particularly true in the absence of a state statutory vehicle for this claim. Cf. Do Corp. v. Town of Stoughton, No. 13-cv-11726-DJC, 2013 WL 6383035, at *13 (D. Mass. December 6, 2013) (dismissing claim under the Declaration of Rights where claim could have

13

been brought under MCRA for allegation of violation of constitutional or statutory rights by threats, intimidation or coercion).

Accordingly, the Court DENIES the motion to dismiss the Article 26 claim.

## VI. Conclusion

For the reasons discussed above, the Court:

1. ALLOWS UMCH's motion to dismiss, D. 12, and DISMISSES UMCH from this action;

2. ALLOWS IN PART the DOC Defendants' motion to dismiss, D. 21, as to the negligence claim (Count Three) against the DOC and DISMISSES the DOC from this action;

3. DENIES IN PART the DOC Defendants' motion to dismiss, D. 21, as to the Eighth and Fourteenth Amendment claims (Count One) against Saba and the Massachusetts Declaration of Rights claim (Count Two) against Saba; and

4. DISMISSES without prejudice Thompson from this action. See note 4, supra.

**So ordered.**

/s/ Denise J. Casper
United States District Judge